UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARISA TYLER                                                                                    PLAINTIFF

V.                                        No. 3:21-CV-175-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                  DEFENDANT

**ORDER**

**I.   Introduction**

On May 20, 2019, Plaintiff, Marisa Tyler ("Tyler"), applied for disability and disability insurance benefits and supplemental security income, alleging that her disability began on March 22, 2019. (Tr. at 15). In a written decision dated February 2, 2021, an Administrative Law Judge ("ALJ") denied her application.[1] (Tr. at 28). The Appeals Council denied Tyler's request for review on July 29, 2021, making the ALJ's denial of Tyler's application for benefits the final decision of the Commissioner. (Tr. at 1–3). Tyler has requested judicial review.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

---

[1] The relevant time-period for determination of Tyler's eligibility for benefits is March 22, 2019, through February 2, 2021. (Tr. at 15–28).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  The Commissioner's Decision

Tyler meets the insured statues requirements of the Social Security Act through September 30, 2024 (meaning she has sufficient quarters of coverage to be entitled to disability and disability insurance benefits through that date). (Tr. at 18).

The ALJ found that Tyler had not engaged in substantial gainful activity since the alleged onset date of March 22, 2019.[3] *Id*. The ALJ found, at Step Two, that Tyler had the following severe impairments: peripheral vascular disease status post stenting, obesity, degenerative joint disease of the right knee status post total knee replacement, rheumatoid arthritis, cervical degenerative disc disease with radiculopathy, osteoarthritis, degenerative joint disease of the right hip, and cervicalgia.[4] *Id*.

After finding that Tyler's impairments did not meet or equal a listed impairment (Tr. at 21–22),[5] the ALJ determined that Tyler had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[4] The ALJ determined that the impairments of hypertension, GERD, bilateral carpal tunnel syndrome, migraines, neurocognitive disorder, and tobacco use were non-severe. (Tr. at 18–19).

[5] See 20 C.F.R. Part 404, Subpt. P, Appendix 1.

the following additional limitations: (1) she can no more than occasionally climb ramps and stairs; (2) she can never climb ladders, ropes, or scaffolds; (3) she can no more than occasionally balance, stoop, kneel, crouch, and crawl; (4) she can no more than occasionally push and pull with the right lower extremity; (5) she can frequently reach overhead bilaterally; and (6) she should avoid concentrated exposure to unprotected heights, hazardous machinery, and excessive vibration. (Tr. at 22).

Based upon testimony from a Vocational Expert ("VE"), as well as Tyler's own testimony, the ALJ determined that Tyler was capable of performing past relevant work as an administrative assistant. (Tr. at 26–27). Thus, the ALJ concluded that Tyler was not disabled. *Id*.

### III.   Discussion

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however,

merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

    B.    Tyler's Arguments on Appeal

Tyler contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that: (1) the ALJ erred in his determination that certain impairments were non-severe at Step Two; (2) the ALJ

did not properly evaluate the medical opinions; and (3) the RFC did not account for all of Tyler's credible limitations.

Tyler suffered from neck, back, hip, and knee pain. She said that the impairments significantly limited her ability to function. (Tr. at 55–66). However, she admitted that she could occasionally do household chores, attend church, care for her elderly father, pick up her grandchildren from school, ride an exercise bike, use Facebook, manage her finances, and care for her 70-lb dog.[6] (Tr. at 23–25, 68–73, 276–285). Also, treatment for these impairments was conservative, except for a right knee replacement surgery in July 2020. (Tr. at 834–857). Tyler felt great after the surgery and by August 2020 she had met her physical therapy goals.[7] (Tr. at 784–788, 971–976). Physical therapy, heating pads, and steroid injections helped with these conditions. (Tr. at 20–25). Moreover, Tyler's doctors recommended that she lose weight and exercise to mitigate her physical problems.[8] (Tr. at 604, 735–741). Tyler told her doctor in May 2020 that she was not following these recommendations. *Id*.

---

[6] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[7] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[8] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Tyler had bilateral carpal tunnel syndrome, and she used bilateral wrist sprints, which helped somewhat. (Tr. at 407–412). Objective testing showed moderate-to-severe carpal tunnel syndrome bilaterally, but no ulnar or peripheral neuropathy or radiculopathy. *Id*. On December 18, 2018, Tyler had left carpal tunnel release, and thereafter, her pain leveled off and she said that hydrocodone was helping. (Tr. at 413–434). In January 2019, Tyler said she was doing well after surgery and she showed no tenderness to palpation. (Tr. at 431–438). Tyler experienced some pain in her right hand in November 2020, but objective testing did not reveal obvious problems. (Tr. at 1071–1076).

Tyler alleged neurocognitive problems and psychiatric issues, but cognitive testing revealed no more than mild memory and attention deficits. (Tr. at 606–607). Additionally, Tyler admitted that she did not pursue any specialized psychiatric treatment. (Tr. at 62–63). On November 3, 2020, Tyler's mental status examination was normal, and on that date, she denied depression symptoms. (Tr. at 1073–1075).

Tyler also asserted that migraines interfered with her ability to function. However, the record shows grossly normal neurological testing, and Tyler did not regularly complain of headaches. (Tr. at 19, 635–637). She did not require emergent care for migraines and she did not allege problems stemming from headaches on her disability function reports. (Tr. at 26, 276–285).

The record shows that Tyler was obese during the relevant time-period. (Tr. at 24). The ALJ properly considered this factor and its impact on any of Tyler's other impairments, and he wrote that he considered the effects of obesity when he arrived at the RFC. *Id.*; *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004) (ALJ discussed obesity in accordance with regulations).

Tyler argues that the ALJ erred when he found that Tyler's migraines, neurocognitive disorder, and right carpal tunnel syndrome were non-severe at Step Two.[9] (Doc. No. 10 at 29). The record, as discussed above, showed mild conditions that were amendable to conservative treatment and, also, that Tyler retained the ability to perform a variety of daily activities. Objective testing was grossly normal (except for severe left carpal tunnel syndrome, which improved after surgery). The ALJ did not err in his Step Two finding.[10]

---

[9] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

[10] Tyler's argument that the RFC did not fully incorporate her limitations fails for the same reasons. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). The RFC for sedentary work with postural restrictions incorporated Tyler's limitations.

Tyler contends that the ALJ erred in his evaluation of medical opinion evidence.[11] Two Disability Determination Services medical experts reviewed the records and found that Tyler would be able to perform light work with some postural limitations.[12] (Tr. at 24–25). The ALJ found that these opinions were not persuasive. *Id*. He concluded that Tyler was more limited, based on the record as a whole; he determined that Tyler should actually be limited to sedentary, and not light, exertional work. (Tr. at 22). Two Disability Determination Services psychiatric experts reviewed the records and found no more than mild mental functional limitations. (Tr. at 25). The ALJ found these opinions persuasive, based on grossly normal cognitive testing and Tyler's ability to perform activities requiring mental acuity. *Id*.

Tyler's PCP, Andrew Smith, APRN, filled out a short checkbox form in November 2019. (Tr. at 630–633). On the form, which contained very little citation

---

[11] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1–2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

[12] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

to medical evidence,[13] Mr. Smith indicated that Tyler could not perform even sedentary work, and that she would need extra accommodations at work, such as the ability to take frequent breaks and the ability to shift from sitting to standing. *Id*. The ALJ found that this opinion was not persuasive, and he gave good reasons for that conclusion. (Tr. at 25–26). He said that Mr. Smith's opinion was not supported by his own clinic notes, showing largely normal physical examinations. *Id*. The ALJ also stated that the opinion was inconsistent with Tyler's ability to perform a variety of daily activities. *Id*. The ALJ properly evaluated Mr. Smith's opinion.

West Allen, M.D., completed a checkbox migraine opinion form in July 2019, in which he indicated that Tyler would miss one day of work per week due to migraines.[14] (Tr. at 573–574). There is no indication that Tyler regularly treated with Dr. Allen, only that she asked him to fill out disability paperwork. (Tr. at 637). Dr. Allen did not cite to one bit of medical evidence or objective testing results in his short opinion. (Tr. at 573–574). The ALJ held that Dr. Allen's opinion was not persuasive, because Tyler did not regularly report headaches to her providers or seek emergent care for any migraines. (Tr. at 26). The opinion seems to be based largely on subjective complaints.

---

[13] Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675–76 (8th Cir. 2018).

[14] Dr. Allen also wrote that Tyler had no ER visits for migraines in the last 12 months. *Id*.

Consistency and supportability are the most important factors that an ALJ must consider when evaluating medical opinions. While the ALJ did not specifically used the word *consistent* in his reasoning for discounting Dr. Allen's opinion, the Eighth Circuit has determined that a deficiency in an ALJ's opinion writing is not automatically a cause for reversal, especially with respect to treatment of medical opinions. *Norwood v. Kijakazi*, 2022 WL 1740785 (8th Cir. 2022). When the disability claim is "not a close call," deference is given to the ALJ's decision to discount unsupported medical opinions. *Grindley v. Kijakazi*, 9 F.4th 622, 63 (8th Cir. 2021).

## IV.   Conclusion

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated Tyler's impairments at Step Two, and the RFC fully incorporated limitations associated with those impairments. Moreover, the ALJ properly discounted the medical opinions of Mr. Smith and Dr. Allen. The finding that Tyler was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 28th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE